**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ERNEST SEHRINGER,

       Plaintiff,

vs.                                  CASE NO. 3:07-cv-354-J-25TEM

BIG LOTS, INC.,
an Ohio corporation,

       Defendant.

_____

## REPORT & RECOMMENDATION[1]

This case comes before the Court on Defendant's Motion to Dismiss Complaint and Quash Service of Process (Doc. #3), Plaintiff's Opposition to Defendant's Motion to Dismiss Complaint and Quash Service of Process and Plaintiff's Request for Evidentiary Hearing (Doc. #8, Opposition), Defendant's Memorandum in Support of Defendant's Motion to Dismiss Complaint and Quash Service of Process (Doc. #11), Plaintiff's Opposition to Defendant's Memorandum in Support of Defendant's Motion to Dismiss Complaint and Quash Service of Process and Plaintiff's Renewed Request for Evidentiary Hearing (Doc. #13), and Plaintiff's Motion for an Order Directing Clerk to Issue Summons (Doc. #16). This matter has been referred to the undersigned for a report and recommendation to the District Judge.

_____

[1]Any party may file and serve specific, written objections hereto within TEN (10) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(a), 6(a) and (e); Local Rule 6.02(a), United States District Court for the Middle District of Florida.

**Background Facts**

The instant breach of contract action was originally filed in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida, on April 4, 2007.  (Complaint, Doc. #2). The action was removed to this Court on April 30, 2007.  (*See* Doc. #1).  Plaintiff is a former district manager for twelve Big Lots retail stores located in and between Jacksonville and Daytona Beach, Florida.  (Doc. #8 at 2).  Big Lots Stores, Inc. is a wholly-owned subsidiary of Big Lots, Inc., an Ohio corporation.  (Affidavit of Charles W. Haubiel, II, (hereinafter "Haubiel Affidavit") Doc. #3 at 2, 4).  While so employed, Plaintiff became eligible to receive incentive compensation "in the form of non-qualified stock options under the Big Lots, Inc. 1996 Performance Incentive Plan, as amended."  (Doc. #8 at 2).  During the years 2000-2005, Plaintiff physically received 5,700 stock option grants within in the state of Florida. (Doc. #8 at 2).  Plaintiff estimates the value of these stock options to be approximately $120,000.  (Doc. #8 at 3).

After approximately ten years of service, Plaintiff retired from his position at Big Lots in September 2006.  (Doc. #8 at 2-3).  In early 2007, Plaintiff requested Big Lots, Inc. allow him to exercise his stock options.  (Doc. #8 at 4).  On March 23, 2007, Plaintiff's counsel received a letter denying Plaintiff's request to exercise his stock options.  (*Id.*).  The denial was based on language contained in the 1996 Performance Incentive Plan, which provided "that nonqualified stock options may be exercised by a Plan participant only during a period not exceeding three (3) months after the Plan Participant's employment with Big Lots is terminated for any reason. . . ."  (Doc. #8 at 4).  Plaintiff argues that his employment was never "terminated" because he voluntarily retired from his position, therefore the three month time limit does not apply.  (Doc. #8 at 4).

2

Defendant Big Lots, Inc. seeks (1) dismissal of the complaint for lack of personal jurisdiction; (2) to quash service of process as insufficient; and, alternatively, (3) dismissal of Count II of Plaintiff's complaint requesting declaratory judgment. (*See* Doc. #3). Defendant Big Lots, Inc. asserts that as an Ohio corporation, which does not "operate, conduct, engage in or carry on business in Florida" and does not maintain a registered agent in Florida, it is not subject to personal jurisdiction in Florida. (Doc. #3 at 2, 5). Plaintiff contends, *inter alia*, that Big Lots, Inc. exercises operational control over Big Lots Stores, Inc., and therefore Defendant is subject to Florida's long arm statute. (*See* Doc. #8).

On April 5, 2007, service of the complaint was made on Corporation Service Company (CSC) at its Tallahassee office. (Doc. #8 at 5). Defendant states that CSC is the registered agent in Florida for Big Lots Stores, Inc., but not for Big Lots, Inc. (Doc. #3 at 5-6). Defendant further states that CSC is not authorized, nor has ever been authorized, to accept service of process for Big Lots, Inc. in Florida. (*Id.*). Plaintiff contends that CSC is the registered agent for Big Lots, Inc. in Ohio, and under Florida law, service on any employee of the registered agent is sufficient. (Doc. #8 at 18). Thus, Plaintiff argues, service accepted by a CSC employee in Florida is sufficient to effect service of process on Big Lots, Inc. (*Id.*). In an apparent abundance of caution, Plaintiff moved the Court for leave to issue a second summons to Defendant Big Lots, Inc., so that any defect in the original service would be cured (*see* Doc. #16).

**Analysis**

**I. Documents Pending Before This Court**

Since removal to the District Court for the Middle District of Florida on April 30, 2007,

this action has been subject to the Local Rules of this Court.  Local Rule 3.01(a-c) states

> (a) In a motion or other application for an order, the movant shall include a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request, all of which the movant shall include in a single document not more than twenty-five (25) pages.
> (b) Each party opposing a motion or application shall file within ten (10) days after service of the motion or application a response that includes a memorandum of legal authority in opposition to the request, all of which the respondent shall include in a document not more than twenty (20) pages.
> (c) No party shall file any reply or further memorandum directed to the motion or response allowed in (a) and (b) unless the Court grants leave.

Defendant's Motion to Dismiss (Doc. #3) was filed on April 25, 2007.  Five days later

Defendant filed a Notice of Removal to this Court.  (*See* Docket).  Plaintiff's Opposition to

Defendant's Motion to Dismiss and Request for Evidentiary Hearing (Doc. #8) was filed on

May 8, 2007.  Defendant did not seek leave to file a reply to Plaintiff's Opposition, but

nonetheless filed its Memorandum in Support of Defendant's Motion to Dismiss Complaint

and Quash Service of Process (Doc. #11) on May 14, 2007.[2]  Plaintiff then filed his

---

[2]Local Rule 4.02 (c) requires "[w]hen a case is removed to this Court with pending motions on which briefs or legal memoranda have not been submitted, the moving party shall file and serve a supporting brief within ten (10) days after removal in accordance with Rule 3.01(a) of these rules. . . ."  However, Defendant's original motion contained citation to authority, both statute and case law, and an affidavit in support of its position.  Therefore, Defendant has already filed a memorandum of law with the court below, and should not be permitted to submit additional memoranda otherwise improper under the Local Rules.

4

Opposition to Defendant's Memorandum in Support of Defendant's Motion to Dismiss Complaint and Quash Service of Process and Renewed Request for Evidentiary Hearing (Doc. #13) on May 17, 2007.  Defendant's Memorandum in Support (Doc. #11) and Plaintiff's Opposition to same (Doc. #13) were filed in violation of Local Rule 3.01(c).  To allow the parties' reply and surreply briefs to stand would be to allow the litigants to circumvent the rules of this Court, thus rendering the Rules meaningless.  As such, the undersigned recommends the District Court direct the Clerk of Court to **strike from the record** Defendant's Memorandum in Support of Defendant's Motion to Dismiss Complaint and Quash Service of Process (Doc. #11) and Plaintiff' Opposition to Defendant's Memorandum in Support of Defendant's Motion to Dismiss Complaint and Quash Service of Process (Doc. #13).[3]

## II. Defendant's Motion to Quash Service of Process

Rule 4(e)(1), Fed. R. Civ. P., provides for service upon a nonresident "pursuant to the law of the state in which the district court is located."  Florida Statute § 48.081 governs service of process on corporations, and allows for service of process on "any employee at the corporation's principal place of business or on any employee of the registered agent." Fla. Stat. § 48.081(3)(a).

The Florida Supreme Court has not decided whether service of process is sufficient under the instant circumstances.  However, several of Florida's Appellate Courts agree that "statutes governing service of process must be strictly construed, and valid service on a

---

[3]The foregoing analysis will not include arguments contained in the stricken briefs because they are not properly before the Court, and are also unlikely to assist the Court in reaching its conclusion.  The Court finds the initial pleadings are sufficient to enable the Court to address the issues without further briefing or oral argument.

corporation may only be effected by complying with them." *Int'l Steel Truss Co. v. Artec Group, Inc.*, 824 So.2d 340 (Fla. 2d DCA 2002), quoting *York Communications, Inc. v. Furst Group, Inc.*, 724 So.2d 678 (Fla. 4th DCA 1999); *see also Lisa S.A. v. Gutierrez*, 806 So.2d 557 (Fla. 3d DCA 2002).  Furthermore, the purpose of the hierarchy set forth in § 48.081 is to "have service made upon some one who is held responsible by the corporation and it contemplates that service shall be made, whenever possible, on the more responsible officers before resorting to service upon one of the inferior officers or agents of the corporation." *Emery Worldwide, Inc. v. Indem. Insurance. Co. of N. Am.*, 797 So.2d 623, 624 (Fla. 3d DCA 2001) (internal citations omitted).  This reasoning comports with Eleventh Circuit's view that "the purpose of process is to advise the party of the nature of the action brought against him." *Woodham v. Nw. Steel & Wire Co.*, 390 F.2d 27, 30 (11th Cir 1968)[4] ("The test used to determine if service upon an agent is sufficient to constitute service upon a corporation is whether or nor, in fact, the corporation will receive notice of the action.").  In making its determination, the court must consider "the particular facts of the case sub judice." *Id.* at 29.

In the instant matter, Plaintiff contends that service on any CSC employee, including those in CSC's Tallahassee office, complies with the statutory allowance that "any employee of the registered agent" be permitted to receive process.  (Doc. #8 at 18). Defendant Big Lots, Inc. asserts that "[CSC] is not authorized to accept service on behalf of Big Lots, Inc. in Florida, and is not Big Lots, Inc.'s registered agent for service of process

---

[4]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

in Florida." (Doc. #3, Haubiel Affidavit at 3).  Considering the purpose of Florida's service of process statute, even a strict reading of the law would not allow service on any employee of a registered agent in Florida to suffice as notice to a Defendant in Ohio merely because the two corporations share a common company designated to receive service.  If the two corporations were not related, this Court does not believe that allowing such service to stand would comport with the "strict reading" required by Florida courts.

However, considering the particular facts presented, this is not a case where the two corporations are unrelated.  Defendant' s general counsel stated in his affidavit that CSC "is the registered agent for Big Lots Stores, Inc. which is a separate legal entity and wholly-owned subsidiary of Big Lots, Inc." (*Id.* at 4).  Thus, it appears that Defendant's wholly-owned subsidiary, Big Lots Stores, Inc., was properly served with process.  "By itself, the fact that the party actually served is the wholly-owned subsidiary of the party for who service was intended does not support substitute service." *Aquila Steel Corp. v. Fontana*, 585 So.2d 426, 427 (Fla. 3d DCA 1991).  However, "where there is a showing by plaintiff that the parent corporation exercised such a degree of control over its subsidiary that the activities of the subsidiary were in fact the activities of the parent within the state," such substitute service of process permitted.  *Id.*; *see also Volkswagenwerk Atkiengelselischaft v. McCurdy*, 340 So.2d 544, 545 (Fla. 1st DCA 1976).

Plaintiff submitted a lengthy brief describing the relationship between Big Lots, Inc. and Big Lots Stores, Inc., including the Affidavit of Ernest Sehringer (hereinafter "Sehringer Affidavit"). (*See generally* Doc. #8, and Doc. #10-2).  Plaintiff Sehringer describes in his affidavit two occasions when Big Lots, Inc. executives visited the Big Lots stores over which he was district manager.  (Doc. #10-2 at 2-3).  Visits to retail stores by Big Lots, Inc.

7

executives alone do not necessarily evidence operational control.  It has not been disputed, however, that Big Lots, Inc. compensated Plaintiff Sehringer through the 1996 Performance Incentive Plan, as amended.[5]  The fact that Big Lots, Inc. is compensating employees of Big Lots retail stores suggests at least some control over the stores' operations.  The Haubiel Affidavit clearly states that Plaintiff Seheringer "is not and has never been an employee of Big Lots, Inc." (Doc. #3 at 3).  This, and other evidence, including information contained in the Big Lots, Inc. 2006 Annual Report, indicates that Big Lots, Inc. did exert operational control over Big Lots Stores, Inc.'s retail locations.  (*See* Doc. #10-4).

In Big Lots, Inc.'s 2006 Annual Report, the opening letter to shareholders from Big Lots, Inc.'s CEO, Chairman, and President Steven S. Fishman, certainly suggests to investors that Big Lots, Inc. exerts operational control over subsidiary retail stores.  (Doc. #10-3 at 4-8).  Mr. Fishman informs investors that Big Lots, Inc. has made changes to its retail stores' (i.e. stores under Big Lots Stores, Inc.) merchandise assortments, and added resources and talent to improve seasonal business.  (Doc .#10-3 at 5).  He goes on to describe improved marketing, which includes "better displays, a new clearance area presentation, redesigned print circulars," and a new "consumer-focused Web site."  (*Id.*).  The touching story Mr. Fishman tells about having coffee with his "associates" suggests that the Big Lots, Inc. company is one cohesive group of employees, "whether they source products, process orders, ship goods, run a register, recruit talent, or design ads."  (Doc. #10-3 at 5).  According to Mr. Fishman, he is "creating a culture of accountability" at Big Lots, Inc., which appears to include the individuals who work in Big Lots, Inc.'s subsidiary

---

[5]The Big Lots, Inc. 1996 Performance Incentive Plan, as amended, is Exhibit A to Plaintiff's Complaint (Doc. #2-2).

retail stores.  (*Id.*).  The letter goes on to explain that "for now, we are focused on improving the performance in our existing fleet of stores," and such improvements may include decreasing the number of retail stores.  (Doc. #10-3 at 6).

According to the company's own documents, Big Lots, Inc. controls displays and presentations within the retail stores, makes efforts to improve the performance of the stores and has the power to decrease the number of subsidiary retail locations in order to achieve the long-term goals of Big Lots, Inc.  (Doc. #10-3 at 6).  Where Big Lots, Inc. provides Big Lots retail store employees with incentive compensation and exercises internal control over the appearance and performance of individual store locations, this Court finds a significant exercise of operational control by Big Lots, Inc. over its subsidiary retail stores, including its Florida Big Lots retail locations.

Big Lots, Inc.'s Form 10-K also suggests, at least to investors, that Big Lots, Inc. has operational control over it subsidiary retail stores.  (Doc. #10-4).  The form states that Big Lots, Inc. operates "a total of 1,375 stores in 47 states."  (*Id.* at 2).  Further, Big Lots, Inc. "internally evaluate[s] and externally communicate[s] overall sales and merchandise performance."  (*Id.*).  The form boasts that Big Lots, Inc. had 38,738 active associates in February 2007.  (*Id.*).  One hundred-four of Big Lots, Inc.'s subsidiary retail stores are located in the state of Florida, and it attempts "to maximize the amount of closeout merchandise available in [its] stores."  (Doc. #10-4 at 2-3).

In an attempt to provide "great value" to its customers, Big Lots, Inc. works "closely with [its] suppliers to obtain merchandise" from brands customers will recognize.  (Doc. #10-4 at 2).  Big Lots, Inc. uses "national television advertising that covers all stores in all markets."  (Doc. 10-4 at 4).  It also designs print advertising for subsidiary retail stores,

which are distributed "regionally to take advantage of market differences caused by product availability, climate, and customer preferences." (*Id.*).  The Big Lots, Inc. advertising scheme also incorporates "store promotions, including in-store signage." (*Id.*).  The information contained in Big Lots, Inc. Form 10-K and the 2006 Annual Report strongly suggest that Big Lots, Inc. exerts substantial operational control over the 1,375 retail stores throughout the country, including Big Lots Stores, and there is no indication that the Florida store locations are any exception.  From the information contained in Defendant Big Lots, Inc.'s 2006 Annual Report and Form 10-K, it is apparent that Big Lots, Inc. does exercise operational control over its subsidiary retail stores such that service of process on Big Lots Stores, Inc. is sufficient substitute service on Big Lots, Inc.   Under Florida case law substitute service on a subsidiary company is allowed where operational control over the subsidiary, such as seen here, is exercised by the parent company within Florida.  *Aquila Steel Corp.*, 585 So.2d at 427.

Additionally, despite the fact that service of process in this case occurred on an recipient at the bottom of the hierarchy established by § 48.081, the purpose of the statute was still effected.  The District Court should take notice that Big Lots Stores, Inc.'s 2006 Annual Report filed with the Florida Secretary of State lists Charles Haubiel, II as an officer of that corporation.  (Doc. #8 at 23).  Mr. Haubiel's affidavit confirms that he is also "Senior Vice President, General Counsel and Corporate Secretary for Big Lots, Inc.," and he received a copy of the Summons "on or about April 12, 2007."  (Haubiel Affidavit at 3).  Once an officer, such as Mr. Haubiel, was made aware of the litigation on behalf of both Big Lots, Inc. and Big Lots Stores, Inc., the purpose of informing a responsible corporate representative was similarly satisfied.  Therefore, having satisfied the criteria for substitute

10

service, and having effected the purpose of sufficient service, the Court should **deny** Defendant's Motion to Quash Service of Process, and Plaintiff's service to Big Lots Stores, Inc.'s registered agent in Florida should stand.  Additionally, Plaintiff's Motion for an Order Directing Clerk to Issue Summons (Doc. #16) should be **denied as moot**.

### III. Personal Jurisdiction over Defendant Big Lots, Inc.

Defendant Big Lots, Inc. contends that it is not subject to personal jurisdiction in Florida because (1) it does not maintain an office or agency in Florida, (2) it does not transact business in Florida, and (3) it does not have sufficient minimum contacts with Florida to maintain personal jurisdiction without offending traditional notions of fair play and substantial justice.  (Doc. #3 at 3-4).  Defendant's Notice of Removal (Doc. #1) notes that this Court has subject-matter jurisdiction over the instant action under U.S.C. § 1332, by virtue of diversity of citizenship and the amount in controversy.  (Doc. #1 at 2).

A federal court's personal jurisdiction over a defendant is a question of law.  *Consol. Devel. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996).  The plaintiff bears the burden of proof in establishing personal jurisdiction over a non-resident defendant.  *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268-68 (11th Cir. 2002).  To the extent the "plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff."  *Meier*, 288 F.3d at 1269, citing *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990); *see also Sculptchair*, 94 F.3d at 672.  "In most cases, the affidavits can be harmonized, and the court will be in a position to make a decision based on facts which are essentially undisputed."  *Venetian Salami v.*

*Parthenais*, 554 So.2d 499, 502-503 (Fla. 1989).

The determination of personal jurisdiction over a non-resident defendant has two parts: (1) whether the forum state's long-arm statute provides a basis for personal jurisdiction, and (2) whether sufficient minimum contacts exist between the defendant and the forum state to satisfy traditional notions of fair play and substantial justice under the Fourteenth Amendment to the Constitution. *Sculptchair*, 94 F.3d at 626; *see also Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890 (11ᵗʰ Cir. 1983) ("a federal court in a diversity action may exercise personal jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum state."). "Only if both prongs of the analysis are satisfied, may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Madara*, 916 F.2d at 1514. Further, because the long-arm statute is Florida state law, "federal courts are required to construe it as would the Florida Supreme Court." *Sculptchair*, 94 F.3d at 627; *Madara*, 916 F.2d at 1514 (internal citations omitted). "The Florida long-arm statute is strictly construed." *Oriental Imports & Exports, Inc.,* 701 F.2d at 891.

**a. The Florida Long-arm Statute**

Florida Statute § 48.193 provides that "any person" submits himself to jurisdiction of the courts of Florida when "operating, conducting, engaging in, or carrying on a business or business venture in" Florida. Fla. Stat. § 48.193(1)(a). "In order to establish that a defendant is 'carrying on business' for the purpose of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 106 F.Supp. 2d 1278, 1281 (S.D. Fla. 1999). As a general proposition, "a foreign

12

parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there."  *Meier*, 288 F.3d at 1272; *see also Waxoyl, A.G. v. Taylor, Brion, Buker & Green*, 711 So.2d 1251 (Fla. 3d DCA 1998).  However, courts will make an exception where "the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity."  *Meier*, 288 F.3d at 1272; *see also Gadea v. Star Cruises Ltd.*, 949 So.2d 1143, 1147-48 (Fla. 3d DCA 2007) ("The amount of control exercised by parent must be high and very significant. . . it is where a subsidiary manifests no separate interests of its own, but in effect functions only as an agent to achieve the purposes of the parent corporation."[6]).  The exception will apply, and jurisdiction will extend, "where the affiliated domestic corporation 'manifests no separate corporate interests of its own and functions solely to achieve the purpose of the dominant corporation.'"  *Meier*, 288 F.3d at 1273, quoting *State v. Am. Tobacco Co.*, 707 So.2d 851, 855 (Fla. 4th DCA 1998); *see also Oriental Imports & Exports*, 701 F.2d at 892 ("The inquiry whether a nonresident is conducting business in Florida concerns the nature, not the extent, of the nonresident's activities in Florida."); *Pappalardo v. Richfield*, 790 So.2d 1226, 1228 (Fla. 4th DCA 2001) (using agency theory to maintain jurisdiction where parent and subsidiary "were a confusing conglomerate, and were essentially one and the same company both financially and structurally.").[7]

---

[6]The *Gadea* court went on to find the parent was not subject to personal jurisdiction "because no evidence was shown that the parent controlled the day-to-day affairs of the subsidiary."  949 So.2d at 1147.

[7]*See also* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.4 (3d ed. 2002) (For purposes of asserting personal jurisdiction, a corporation is

In the instant matter, Big Lots Stores, Inc. is a wholly-owned subsidiary of Defendant Big Lots, Inc.  (Doc. #3, Haubiel Affidavit at 3, Doc. #10-6 at 1).  Big Lots, Inc.'s Form 10-K lists 104 retail outlets in the state of Florida as of February 3, 2007.  (Doc. #10-4 at 3).  The opening sentence of Big Lots, Inc.'s Form 10-K company information explains that Big Lots, Inc. and its wholly-owned subsidiaries are "collectively referred to herein as 'we,' ' us,' 'our,' or 'Company.'"  (Doc. #10-4 at 2).  From beginning to end, Big Lots, Inc.'s Form 10-K makes no differentiation between Big Lots, Inc. and its subsidiary corporations, including Big Lots retail stores located in Florida.  The information contained in the Form 10-K and its attachments shows that Big Lots, Inc. not only operates "a total of 1,375 stores in 47 states," but exercises control over the "merchandise available in [its] stores," including "store promotions, [and] in-store signage," and uses "national television advertising that covers all stores in all markets."  (Doc. #10-4 at 4).  Specific to its retail operations, Big Lots, Inc. has "registered or have applications pending to register [its] trademarks and service marks with the United States Patent and Trademark Office."  (Doc. #10-4 at 5).  Big Lots, Inc. goes on to explain that "having distinct intellectual property is an important factor in identifying our business and distinguishing us from others."  (Doc. #10-4 at 5).  It is significant that Big Lots, Inc. purposefully identifies itself and its subsidiary corporations together as distinct from "others" through its trademarks.

Big Lots, Inc. also directly compensates employees of its subsidiary retail stores through the 1996 Performance Incentive Plan, as amended, and offers a Pension Plan to

---

"doing business" in the jurisdiction "if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity.").

14

certain eligible employees.  (Doc. #10-5 at 1, 6).  The Haubiel Affidavit makes clear that

Plaintiff Sehringer "is not and has never been an employee of Big Lots, Inc." (Doc. #3 at

3).  Yet, the lack of employment relationship did not preclude Sehringer from receiving Big

Lots, Inc.  stock options through the 1996 Performance Incentive Plan, as amended. (Doc.

#2 at 3).  The stock options were allegedly distributed to encourage ownership of Big Lots,

Inc. common stock by employees of Big Lots, Inc. and its subsidiaries, and generate

"meaningful incentive to participants to make substantial contributions to [Big Lots, Inc.]'s

future success." (Doc. #2 at 3).  The fact that Big Lots, Inc. would compensate employees

of its subsidiary suggests a strong unity of financial interest between Big Lots, Inc. and its

subsidiary retail stores.

Considering the collective activities of Defendant Big Lots, Inc. and making

reasonable inferences in favor of the Plaintiff, it has been shown that Defendant Big Lots,

Inc. exercises significant control over its subsidiary retail stores, and its separate corporate

status is a formality.  Big Lots Stores, Inc. is merely a vehicle through which Defendant Big

Lots, Inc. conducts business in the state of Florida bringing it well within the grasp of

Florida's long-arm statute (Fla. Stat. § 48.193).

**b. Minimum Contacts**

Jurisdiction consistent with the Constitution requires that a nonresident defendant

have certain minimum contacts so as not to offend traditional notions of fair play and

substantial justice.  *Consol. Devel. Corp.*, 216 F.3d at 1291; *see also Int'l Shoe v.

Washington*, 326 U.S. 310 (1945).  "The nature and quality of these contacts, however, will

vary depending upon whether the type of personal jurisdiction being asserted is specific or

general." *Consol. Devel. Corp*, 216 F.3d at 1291.  Whereas general jurisdiction arises from

a defendant's contacts with a state unrelated to the cause of action, specific jurisdiction arises from the Defendant's activities in the forum state that are related to the cause of action. *Id.* at 1291-92.  Although not stated by either party, it appears from the Complaint that Plaintiff Sehringer is asserting specific personal jurisdiction over Defendant Big Lots, Inc.  (*See generally* Doc. #2).

A defendant is subject to personal jurisdiction where he has "purposefully availed himself of the privilege of conducting activities in the forum State, thus invoking the benefits and protections of its laws."  *Id.* at 1291, quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  There are three criteria to establish minimum contacts: (1) the contacts must be related to the plaintiff's cause of action; (2) the contacts must involve some purposeful availment of the privilege of conducting activities within the forum; and (3) the defendant should reasonably anticipate being haled into court there.  *Sculptchair*, 94 F.3d at 631.

Plaintiff Sehringer's breach of contract claim arises from an agreement entered into as a result of his employment with  Big Lots retail stores in Florida.  "Although the term 'arising from' does not mean proximately caused by, it does require direct affiliate, nexus or substantial connection to exist between the basis for the [plaintiff's] cause of action and the [defendant's] business activity in the state."  *Gadea*, 949 So.2d at 1149-50; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (finding jurisdiction is proper where the contacts with the forum state proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state).

Plaintiff's stock options, and the concomitant contract, were obtained as compensation for Plaintiff's employment at Big Lots retail locations, under Big Lots Stores, Inc., as a wholly-owned subsidiary of Defendant Big Lots, Inc.  (*See* Doc. #2 at 1-2).  The

16

stock options were provided directly to Plaintiff from Defendant Big Lots, Inc., not through a subsidiary, and were part of a detailed, corporation-wide incentive plan, approved and renewed by Big Lots, Inc. shareholders.   (*Id.*, and Doc. #10-5 at 1; *see also* Exhibit A to Complaint (Doc. #2) the 1996 Performance Incentive Plan, as amended).   The instant cause of action is directly related to, and arises from, Defendant's business activities in the state of Florida because (1) Defendant was "doing business" in Florida by virtue of its operational control over subsidiary retail stores, *see discussion, supra*; and (2) Plaintiff's stock options were obtained as compensation from Defendant Big Lots, Inc. as an employee of its business activities in its retail stores in Florida.

Defendant Big Lots, Inc. has purposefully availed itself of the privilege of conducting business in the state of Florida.   Defendant Big Lots, Inc. operates 104 retail stores in Florida and markets its stores and merchandise to Florida residents via national television advertising and regionally distributed print advertising.   (Doc. #10-4, 3-4).   In *Sculptchair, Inc. v. Century Arts, Ltd.*, the Eleventh Circuit found a defendant who marketed products in the state of Florida had "purposefully availed herself of the privilege of conducting business in Florida."   *Sculptchair*, 94 F.3d 632 at 631.   The *Sculptchair* court went on to explain that such marketing "is the kind of activity that would lead a person to reasonably expect the possibility of ensuing litigation in a Florida court should some type of dissatisfaction or complications arise."   *Id.* at 631.   Through its marketing of products to Florida residents, and its operational control of its Florida retail stores, Defendant Big Lots, Inc. has both purposefully availed itself of the privilege of conducting business in Florida and should reasonably anticipate being haled into court in the state of Florida.

Finally, having determined that Defendant Big Lots, Inc. has sufficient minimum

17

contacts with the state of Florida, the Court must also determine if exercising its jurisdiction comports with "fair play and substantial justice." *See generally Burger King*, 471 U.S. 462 (1985). In making such a decision, "a court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987). "[O]ften the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even serious burdens placed on the alien defendant." *Id.* at 114.

The Plaintiff in this matter is a Florida resident (Doc. #10-2 at 2), while Defendant Big Lots, Inc. is an Ohio corporation, with its principal place of business in Ohio. (Haubiel Affidavit, Doc. #3 at 2). The burden on Defendant Big Lots, Inc. to defend this action in Florida would be slight considering its national and local business activities and its interest in maintaining control over its Florida subsidiary retail stores. Additionally, not only would Plaintiff be burdened by having to litigate his claims in another forum, but the state of Florida has an interest in assuring that its residents can have claims arising from employment in Florida redressed in a Florida court. *See, e.g.*, *Asahi Metal Indus. Co., Ltd.*, 480 U.S. at 113 (noting the forum state has interests to be considered when determining whether to exercise jurisdiction).

Defendant Big Lots, Inc. has satisfied Florida's long-arm statute, Fla. Stat. § 48.193, for "carrying on a business" within the state of Florida by virtue of the operational control Big Lots, Inc. exerts over its subsidiary retail stores. Sufficient minimum contacts also exist between Defendant Big Lots, Inc. and the state of Florida through its operational control, and marketing of Big Lots retail stores and merchandise to Florida consumers. As a result of these activities, Defendant Big Lots, Inc. has availed itself of the privilege of doing

18

business in Florida.  Plaintiff's claims are directly related to Defendant Big Lots, Inc.'s business activities in Florida making it reasonable that Defendant Big Lots, Inc. anticipate being haled into a Florida court.  The burden on Defendant Big Lots, Inc. in having to defend litigation in Florida is slight, thus this Court's exercise of specific personal jurisdiction comports with traditional notions of fair play and substantial justice.

## IV. Defendant's Motion to Dismiss Count II

Contained within Defendant's Motion to Dismiss Complaint and Quash Service of Process (Doc. #8) is Defendant's Motion to Dismiss Count II of Plaintiff's Complaint.  Count II of the complaint seeks declaratory judgment enjoining Defendant Big Lots, Inc. from refusing to allow Plaintiff to exercise his stock options.  (Doc. #3 at 4, and Doc. #2 at 12-14).  Defendant argues (1) that Plaintiff has an adequate remedy at law; and, (2) Plaintiff's requested relief is inconsistent with the allegations contained in the complaint.  (Doc. #3 at 4-5).

Florida Statute § 86.111 provides that "existence of another adequate remedy does not preclude a judgment for declaratory relief."  The Florida Supreme Court has explained that "the purpose of a declaratory judgment is to afford parties relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations." *Coalition for Adequacy & Fairness in School Funding, Inc. v. Chiles*, 680 So.2d 400, 404 (Fla. 1996) quoting *Santa Rosa County v. Admin. Comm'n, Div. of Admin. Hearings*, 661 So.2d 1190, 1192 (Fla. 1995).

Alternatively, in Florida, "the election of remedies doctrine applies where the remedies in question are coexistent and inconsistent. . . Remedies are only inconsistent where 'the allegations of facts necessary to support one remedy are substantially

19

inconsistent with those necessary to support the other.'" *Macola v. Gov't Employees Insurance. Co.*, 410 F3d 1359, 1364 (11ᵗʰ Cir. 2005) citing *Barbe v. Villeneuve*, 505 So.2d 1331, 1332 (Fla. 1987). "Generally, an election between inconsistent remedies is made after a verdict is entered." *Wynfield Inns v. Edward Leroux Group, Inc.*, 896 F.2d 483, 488 (11ᵗʰ Cir. 1990).

In the instant matter, Plaintiff seeks damages resulting from Defendant Big Lots, Inc.'s refusal to allow Plaintiff to exercise his stock options under the 1996 Performance Incentive Plan, as amended, and an order permanently enjoining Defendant Big Lots, Inc. from continuing to deny Plaintiff his right to exercise his stock options under the 1996 Performance Incentive Plan, as amended.  (*See* Doc. #2 at 10, 13).  Even in the event that the Court granted Plaintiff's requested relief and enjoined Defendant from refusing to allow Plaintiff to exercise his stock options,[8] Plaintiff would still have a viable breach of contract claim for damages resulting from the delay in exercising the options and his costs to require Defendant Big Lots, Inc.'s performance.  The factual allegations required to prove that Defendant Big Lots, Inc. has breached a contract with Plaintiff are not necessarily inconsistent with facts alleging the continued breach of that contract.  Furthermore, Defendant Big Lots, Inc. has pointed to no specific inconsistent factual allegations.  Thus, Plaintiff's claims are not inconsistent.  Lacking statutory preclusion, nor inconsistency of remedies, Plaintiff's declaratory judgment claim should not be denied on these grounds.

As to inconsistencies between the complaint and its attached exhibits, Defendant does not direct the Court's attention to any specific inconsistency between the documents.

[8]Florida Statute § 86.111 states: "The court may order a speedy hearing of an action for declaratory judgment and may advance it on the calendar."

20

To the extent that contractual language contained in the exhibits appears inconsistent with Plaintiff's factual allegations, such a determination goes to the merits of Plaintiff's breach of contract claim and are not properly before the Court.  Therefore, Defendant's Motion to Dismiss Count II, contained within Defendant's Motion to Dismiss Complaint and Quash Service, should be **denied**.

**Conclusion**

Upon due consideration, it is recommended that:

1.      Defendant's Memorandum in Support of Defendant's Motion to Dismiss Complaint and Quash Service of Process (Doc. #11) and Plaintiff' Opposition to Defendant's Memorandum in Support of Defendant's Motion to Dismiss Complaint and Quash Service of Process (Doc. #13) be **stricken from the record**;

2.      Defendant's Motion to Dismiss Complaint and Quash Service of Process (Doc. #3) be **DENIED**;

3.      Plaintiff's Request for Evidentiary Hearing (Doc. #8), as contained within Plaintiff's Opposition, be **DENIED**; and,

4.      Plaintiff's Motion for an Order Directing Clerk to Issue Summons (Doc. # 16) be **DENIED as moot**.[9]

---

[9]Alternatively, the undersigned would recommend Plaintiff's Motion for an Order Directing Clerk to Issue Summons (Doc. # 16) be granted with an enlargement of time for service of process so the Plaintiff is given the opportunity to cure any perceived defect in service of the complaint on Defendant.

**DONE AND ENTERED** at Jacksonville, Florida this 22nd    day of August, 2007.

Copies to all counsel of record
        and *pro se* parties, if any

The Hon. Henry Lee Adams, Jr.

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge

22